CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

SEP 03 2020

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 4:18cr00005 |
| v. | ) | |
| | ) | By: Hon. Michael F. Urbanski |
| PETER DYWANE DIXON, | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter comes before the court on Defendant Peter Dywane Dixon's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 80. The government opposes Dixon's motion, ECF No. 86, and Dixon has replied. ECF No. 90. The court will **DENY** Dixon's motion because he has not demonstrated that extraordinary and compelling reasons exist to warrant his release.

I.

On September 4, 2018, Dixon pleaded guilty to possessing a measurable quantity of a mixture containing cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C),[1] and possession of a firearm in furtherance of a drug trafficking crime and using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Dixon received a sentence of 84 months—24 months on the possession count, and 60 months on the firearms count, with the sentences to run consecutively. Dixon is currently housed at FCI Loretto and has a projected release date of January 20, 2024. On April 19, 2020, Dixon submitted a compassionate release request to the warden; it was denied

---

[1] This was a lesser included offense of Count 1 of Dixon's Indictment. (See Plea Agmt. Pg. 1, ECF No. 44.)

on April 24, 2020. He appealed the denial through the Administrative Remedy Program on June 5, but his appeal was denied by the warden on June 23, 2020.

On July 28, 2020, Dixon, represented by counsel, filed a motion seeking compassionate release in this district due to the COVID-19 pandemic. Dixon argues that his serious medical "problems"—of which he only lists his hypertension—qualify as "extraordinary and compelling reasons" to warrant a reduction in his sentence because they increase his risk of suffering serious complications should he contract COVID-19.

**II**.

In general, a "court may not modify the term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, the compassionate release statute, as amended by the First Step Act, creates an exception to this rule and authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (2020). Accordingly, Dixon's requested relief requires the court to consider: (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence and if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) if so, if the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction.

    i.    <u>The government has waived the exhaustion requirement.</u>

The provision allowing defendants, in addition to the Bureau of Prisons ("BOP"), to bring motions under § 3582(c) was added by the First Step Act to "increas[e] the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5239 (2018). While the statute allows a defendant to bring the motion before the district court, the defendant must first exhaust his administrative remedies. <u>See</u> 18 U.S.C. § 3582(c)(1)(A). A defendant must satisfy one of two conditions, whichever is earlier: (i) "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or (ii) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" <u>Id.</u> The first condition requires that the defendant fully exhaust all administrative rights – this means that it is not enough for the warden to respond within 30 days by denying the request for compassionate release. If the warden denies the request within 30 days, the defendant must then exhaust all administrative appeals available through the BOP. The second condition can only be met after the lapse of 30 days from when the warden received the defendant's request and has not responded.

Here, Dixon argues that he exhausted his administrative remedies because he made a written request to the warden on April 19, 2020, for compassionate release and received a denial from the warden on April 24, stating that he was denied based on his he had not been "diagnosed with an incurable, progressive illness and [had] not suffered from a debilitating injury from which [he] will not recover." See ECF No. 84-1, at 2. Dixon then asserts that he "appealed through the Administrative Remedy Program on June 5, 2020[, and] [h]is appeal was denied by the warden on June 23, 2020." ECF No. 80, at 3. Dixon contends that he has, therefore, exhausted his administrative remedies. The court disagrees. Dixon ignores the closing paragraph of his second denial: "If you are not satisfied with this response, you may appeal on the appropriate form to the Regional Director, U.S. Customs House . . . .Your appeal must be received in the Director's Office within twenty (20) days of the date of this response." ECF No. 84-1, at 3. Accordingly, Dixon has not exhausted his administrative remedies as he has not shown that he appealed as instructed, or that any such appeal was denied.

This court has previously found that the exhaustion requirement does not operate as a jurisdictional bar under § 3582(c)(1)(A). See United States v. Crawford, No. 2:03-cr-10084, 2020 WL 2537507, at *1, n.1 (W.D. Va. May 19, 2020); see also United States v. Russo, No. 16-cr-441 (LJL), 2020 WL 1862294, at *5 (S.D.N.Y. Apr. 14, 2020). Because the exhaustion requirement is not jurisdictional, it operates as a claims-processing rule and can be waived. See e.g., Crawford, 2020 WL 2537507, at *1 (finding that the exhaustion requirement has been waived where the government failed to raise exhaustion as a ground for denying the motion); Russo, 2020 WL 1862294, at *5 ("[O]ne key consequence of [§ 3582(c)(1)(A)] not being

jurisdictional is that the Government can waive the affirmative defense of exhaustion."); see also United States v. Alam, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) (holding that the exhaustion requirement is a mandatory claims-processing rule that has two exceptions: waiver and forfeiture) (citing United States v. Cotton, 535 U.S. 625, 630 (2002)). In its brief in opposition, the government does not address exhaustion, but merely argues the merits of the motion. See ECF No. 89. Accordingly, the court finds that the government has waived the exhaustion requirement.

  ii.  Dixon does not present extraordinary and compelling reasons to warrant a sentence reduction.

Because the government has waived the exhaustion requirement, the court must then consider whether extraordinary and compelling reasons warrant a reduction in the term of Dixon's imprisonment. See 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. The United States Sentencing Guidelines (USSG) § 1B1.13 (the "Policy Statement") application notes state that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the BOP, for "other reasons" other than, or in combination with, the reasons described in Application Notes (A)-(C). Id., at cmt. n. 1(A)-(D).

This court has previously "join[ed] the many other district courts that have concluded that 'a court may find, independent of any motion, determination or recommendation by the

BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C).'" United States v. Lee, No. 1:95-cr-58, 2020 WL 3422772, at *3 (E.D. Va. June 22, 2020) (quoting United States v. Redd, No. 1:97-cr-6, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020) (collecting cases)). While the court is not constrained by the policy statement, the court finds that it still provides guidance and the defendant must demonstrate that extraordinary and compelling reasons warrant his release.

Here, Dixon has failed to show "extraordinary and compelling reasons" justifying the relief he seeks. "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Harper, No. 7:18-cr-25, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) (citing United States v. Feiling, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)). Dixon argues that that extraordinary and compelling reasons warrant a reduction in his sentence based on medical conditions, but only highlights his hypertension. The Centers for Disease Control and Prevention ("CDC") has issued guidance on specific risk factors that place individuals at a higher risk of severe outcomes from COVID-19.[2] See Wilson v. United States, No. 2:11-cr-180, 2020 WL 3315995, at *3 (E.D. Va. June 18, 2020) ("When assessing compassionate release motions during the pandemic, the Court examines the [CDC's] list of risk factors for severe COVID-19 complications."). While the CDC lists pulmonary

---

[2] Available at: https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html (last visited August 30, 2020).

hypertension as an "increased risk" condition, it lists hypertension as a "might be at an increased risk" condition.[3] Because Dixon suffers from hypertension and not pulmonary hypertension, he has failed to show that he has "a particularized susceptibility to the disease."[4] Harper, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020); see also United States v. Thomas, No. 5:13-cr-19, 2020 WL 3895781, at *3 (W.D. Va. July 10, 2020).

Because the court finds that Dixon has not presented extraordinary and compelling reasons to warrant a reduction in his sentence, it need not determine if the § 3553(a) factors weigh in favor of his release. While the court is sympathetic to Dixon's justifiable fears and the risk that COVID-19 poses, "the mere existence of COVID-19 in society . . . cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020).

### III.

For the reasons stated herein, the court **DENIES** Dixon's motion for compassionate release, ECF No. 80. The clerk is directed to send a copy of this memorandum opinion and accompanying order to the defendant, his counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED**.

Entered: September 1, 2020

---

[3] Dixon admits as such, stating: "The CDC identified hypertension as a comorbidity that may increase the likelihood of serious risk from COVID-19." ECF No. 80, at 4-5.

[4] The court also notes that Dixon has not demonstrated a particularized risk of contracting COVID-19 at FCI Loretto. See Harper, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020). Current BOP records indicate that, of the 846 inmates housed there, there are no active cases of COVID-19 among the inmates at FCI Loretto, seven (7) positive staff, fifty-nine (59) inmate recoveries, and one (1) staff recovery. See https://www.bop.gov/coronavirus/(last visited August 30, 2020). FCI Loretto has zero (0) reported deaths. Id.

- 8 -

*signature*
Michael F. Urbanski
Chief U.S. District Judge
2020.09.01 17:21:39
-04'00'

Michael F. Urbanski
Chief United States District Judge